UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

**CRIMINAL CASE NO. 24-39-DLB-CJS**

**UNITED STATES OF AMERICA**  **PLAINTIFF**

**v.**  **MEMORANDUM OPINION AND ORDER**

**BRENDAN JAMES GIBSON**
**ROBERT JACOB HUGHES**  **DEFENDANTS**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

This matter is before the Court upon Defendants Brendan James Gibson and Robert Jacob Hughes (collectively "Defendants")s' Motions to Dismiss Indictment. (Docs. # 22 and 23). After the United States filed its Response (Doc. # 28) and Defendant Hughes filed his Reply (Doc. # 33), the Court heard oral argument on the Motions on November 21, 2024. (Doc. # 37). Defendants were present for the hearing. Defendant Gibson was represented by Brandon N. Voelker and Defendant Hughes was represented by Steven N. Howe. The United States was represented by Assistant United States Attorney Joel King. At the conclusion of the hearing, the Court took the Motions under submission. (*Id*.). For the following reasons, Defendants' Motions are **granted**.

**I.  ISSUES RAISED**

In their Motions, Defendants move to dismiss the Indictment against them which alleges as follows:

> On or about July 8, 2024, in Grant County, in the Eastern District of Kentucky, BRENDAN JAMES GIBSON and ROBERT JACOB HUGHES aiding and abetting one another, maliciously damaged and destroyed, by

1

means of fire and explosive materials, the building located at 10950 Dixie Highway, Corinth, Kentucky 41010, which was used in interstate and foreign commerce and in any activity affecting interstate and foreign commerce, all in violation of 18 U.S.C. § 844(i).

(Doc. # 4).

In their respective Motions, Defendants argue that the Indictment should be dismissed because the building located at 10950 Dixie Highway, Corinth Kentucky is not used in interstate and foreign commerce nor used in any activity affecting interstate and foreign commerce. In its Response, the United States argues that the Motions are premature because they "strike at the merits of the charge" thus the "disagreement is not ripe, and must await the United States' presentation of evidence at trial." (Doc. # 28 at 2-3). Defendant Hughes was the sole defendant to reply. (Doc. # 33). In his Reply, Hughes argues that this Court has the authority to dismiss the Indictment at this stage because the issue raised "is a matter of law concerning an undisputed question of fact." (*Id.*).

## II.     FACTUAL AND PROCEDURAL BACKGROUND

On July 8, 2024, the Corinth Shiloh Full Gospel Church (the "Church"), located at 10950 Dixie Highway, Corinth Kentucky 41010 owned by Shawn P. Goerler and Tonya M. Goerler caught on fire. (Doc. # 27).[1] A passerby reported the fire at 5:52 a.m. (Doc. # 35). Defendant Gibson and Defendant Hughes were volunteer firefighters with the Corinth Fire Department ("CFD"), where at the time of the fire, they also resided. (Doc. # 27). The CFD is located on the same street as the Church, approximately 270 feet away. (*Id.*). Defendants were the first CFD personnel to respond to the fire, arriving at 6:00 a.m. (Doc. # 35). Soon after, arson investigators began arriving. (*Id.*). Sergeant William

---

[1]     These facts are uncontested and were summarized from the parties' Motion to Suppress filings.

2

Howard with the Kentucky State Police arrived at 7:59 a.m., Calvin Crupper and Paul Messner with the Dry Ridge Fire Department arrived at 9:20 a.m., and ATF Special Agent Sarah Decker arrived at 9:53 a.m. (*Id.*). At 8:08 a.m., Defendants cleared the scene, returning to CFD. (*Id.*). At 11:48 a.m., investigators interviewed Defendants at the CFD building. (*Id.*). Simultaneously, an accelerant detection K9 arrived to walk through the fire scene. (*Id.*). Defendants were asked to return to the scene, where the K9 detected ignitable liquid on Defendants. (*Id.*). Defendants were soon after interviewed at KSP Post 6 around 2:40 p.m. (*Id.*).

The following day, July 9, 2024, Defendants were arraigned in Grant County District Court on state charges alleging a violation of Kentucky Revised Statute § 513.030. (*Id.*). On August 8, 2024, Defendants were indicted by a federal grand jury on one count of violating 18 U.S.C. § 844(i). On September 16, 2024, both Defendant Gibson and Defendant Hughes filed the instant Motions to Dismiss the Indictment. (Docs. # 22 and 23). Following the Government's Response (Doc. # 28) and Defendant Hughes's Reply (Doc. # 33), the Court conducted a hearing on the Motions to Dismiss on November 21, 2024.

At that hearing, the United States confirmed that the building in question was a church. Additionally, when prompted by the Court, the United States proffered the following evidence relating to the Church's interstate activity: (1) the week before the arson occurred, the Church participated in the U.S. 25 yard sale as a fundraiser for an international mission trip, which raised $700; (2) the Church participated in multiple fundraising events for international mission trips; (3) the Church was used as a youth event location; (4) the Church engaged in cookouts; (5) the Church held movie nights; (6)

the Church provided food to the community; (7) the Church was a youth facility for a local recovery team; (8) communion was purchased out of state; (9) four or five out of state pastors had visited the Church; and (10) the building was an annex. Defendants did not contest any of the above proffered facts.

## III. ANALYSIS

Defendants argue that the Indictment should be dismissed because the United States is unable to satisfy the interstate commerce element. The United States argues that the Defendants' Motions are improper, as such argument is more appropriately raised at the close of its proof at trial, versus in a pretrial motion to dismiss. For the reasons set forth below, the Court agrees with the Defendants. However, the Court must first address the United States' procedural argument.

### A. Entertaining Defendants' Motions does not invade the province of the jury.

The United States argues that Defendants' Motions "invade the province of a jury and are improper pretrial motions in accordance with Fed. R. Crim. P. 12(b)(1)." (Doc. # 28 at 1). Specifically, the United States argues that Defendants' Motions to Dismiss are not procedurally appropriate because the Motions "ask the Court to violate Rule 12's rubric by making a factual finding on a necessary element of the charged offense at the pretrial stage" which is a question reserved for a jury. (*Id*. at 3). The Court disagrees.

Promulgated to encourage the making of motions prior to trial, Federal Rule of Criminal Procedure 12(b)(1) states, "a party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." District courts may entertain and dispose of such pretrial motions "if they are capable of determination without trial of the general issue" meaning generally, if the motion raises

4

"questions of law rather than fact." *United States v. Jones*, 542 F.2d 661, 664 (6th Cir. 1976).  However, a district court is not barred from making preliminary findings of fact entirely; rather, a court may make such findings if "necessary to decide the questions of law presented by pre-trial motion so long as the court's findings on the motion do not invade the province of the ultimate finder of fact." *Id.; see also United States v. Covington*, 395 U.S. 57, 60 (1969) (district court permitted to hold pretrial factual hearings if the court finds such hearing necessary to "resolve issues of fact peculiar to a pretrial motion."); *United States v. Levin*, 973 F.2d 463, 467 (6th Cir. 1992) (district courts may make "preliminary findings of fact necessary to decide questions of law[.]").

With respect to factual inquiries regarding a necessary element of the crime charged, the undersigned generally agrees with the United States that a pretrial challenge to the sufficiency of the evidence is ordinarily improper.  However, if the United States presents what can be described as a full proffer of evidence, the Court is permitted to entertain such an inquiry.  *See United States v. Alfonso*, 143 F.3d 772, 776-77 (2nd Cir. 1998) (inquiry into the sufficiency of evidence is premature "[u]nless the government has made what can fairly be described a full proffer of the evidence it intends to present at trial to satisfy the [ ] element of the offense[.]")*; see also United States v. Bunch*, No. 3:09-cr-127, 2010 WL 925790, at *5 (E.D. Tenn. Jan. 25, 2010) ("In order to determine whether the Government cannot, as a matter of law, prove a required element of a crime charged in an indictment, the court may hold factual hearings prior to trial if necessary to resolve issues of fact peculiar to the motion to dismiss.").

In *Levin*, this Court held a pretrial hearing to address the defendants' 12(b) motion to dismiss the indictment.  973 F.2d at 465.  This Court subsequently granted the motion,

5

concluding that the government's undisputed extrinsic evidence introduced during the hearing could not prove, as a matter of law, an element of the offense charged.[2]  *Id*.  On appeal, the Sixth Circuit noted that the pretrial motion "constituted a disposition of a legal issue, namely, the ability of the government to prove intent which was an integral element [] of the offense charged in a duly returned indictment after the trial court had considered undisputed extrinsic evidence." *Id*. at 470.  The Sixth Circuit ultimately affirmed the district court's dismissal, finding that after undisputed evidence was presented, the court, making preliminary findings of fact, properly concluded that as a matter of law, "the government could not prove the required element of intent necessary to support a conviction[.]"  *Id*.

Here, the United States argues that the present Motions act as an improper inquiry into the sufficiency of the evidence for an integral element of 18 U.S.C. § 844(i).[3]  Inquiry into whether a building affects interstate commerce as required by § 844(i) is a mixed question of law and fact.  *United States v. Laton*, 352 F.3d 286, 290 (6th Cir. 2003) ("Because the inquiry into whether the [building in question] affects interstate commerce is a mixed question of fact and law, we review the district court's determination de novo.").

At the November 21, 2024 pretrial hearing addressing Defendants' Motions, the United States affirmatively indicated that there is no dispute that the building in question

---

[2]  At the pretrial hearing, the district court in *Levin* made the following observation: "'Technically, the government can't be estopped, but I guess the rules don't call for summary judgment in a criminal case, but if this is your evidence, it would be a directed verdict at the end, and I don't know why I have to sit through two or three weeks while you put on what we know the evidence will be. There doesn't seem to be a dispute of facts in this case. It's an unusual criminal case in that sense.'"  *Id.* at 466.

[3]  Prior to *United States v. Rayborn*, 312 F.3d 229 (6th Cir. 2002), courts classified the interstate commerce element of 18 U.S.C. § 844(i) as a jurisdictional element.  In 2002, the Sixth Circuit in *Rayborn* addressed the classification, stating that 844(i) is not a jurisdictional element but "is simply one of the essential elements of 844(i). It is not jurisdictional in the sense that it affects a court's subject matter jurisdiction."  *Id*. at 231.

6

is classified as a church or place of worship. Moreover, the detailed facts proffered by the United States, which this Court would describe as a full proffer of the evidence, were undisputed at the hearing. Thus, collectively, the full proffer of facts presented by the United States (both the classification of the building and the potential interstate activities) are entirely undisputed. What remains then, is solely a question of law—whether the undisputed evidence proffered by the United States is sufficient to satisfy the interstate commerce element of 18 U.S.C. § 844(i).[4]

As discussed in Section III (B) below, the undisputed facts proffered by the United States are simply insufficient to pass constitutional muster. In the United States' view, the Court should deny the Defendants' Motions, proceed towards trial, and then grant a Rule 29 motion if the evidence related to interstate commerce is lacking. Similar to the Court's observations in *Levin*, the Court does not see the efficiency in sitting through a trial, when it already knows what the undisputed evidence will be. Therefore, the Court may entertain Defendants' Motions because the findings of fact related to a question of law do not invade the province of a jury, as required by Rule 12 and Sixth Circuit precedent. *See Levin*, 973 F.2d at 467 (upholding the grant of a motion to dismiss because a "trial of the substantive criminal charge would not have assisted the district court or this court in deciding the legal issues joined by the defendant's pretrial motion to dismiss the controversial counts of the indictment."); *Jones*, 542 F.2d at 665 ("The facts surrounding the alleged offense were virtually undisputed and trial of the substantive charges would not substantially assist the court in deciding the legal issue raised by the

---

[4]   In comparison, in the case of *United States v. Kollie*, No. CR 13-179, 2014 WL 820042, at *3 (D. R.I. Mar. 13, 2014) the court noted that an integral fact, the classification of the building in question, was in dispute, and thus whether the building was used in interstate commerce had to be left to the jury.

7

motion to dismiss the indictment."); *Bunch*, 2010 WL 925790, at *5 (a district court "may dismiss an indictment on the motion of a defendant if it concludes based on its preliminary findings of fact that the Government, cannot, as a matter of law, prove a required element of the charged crime."). For all of these reasons, the Court may properly consider Defendants' Motions pursuant to Rule 12(b)(1).

> **B.   The Church's activities do not bring it within the ambit of 18 U.S.C. § 844(i).**

Having concluded that a pretrial ruling on the evidence of the interstate commerce element does not invade the province of the jury, the Court now turns to the Defendants' substantive arguments. Defendants argue that the target of the crime—the Church—is not "used in" interstate commerce or in any activity affecting interstate commerce. 18 U.S.C. § 844(i). The Court agrees.

Traditionally, crimes of arson were "paradigmatic common-law state crime[s]." *Jones v. United States*, 529 U.S. 848, 858 (2000). However, as part of its commerce clause power, Congress federalized certain arson crimes in 1982. In relevant part, the underlying arson statute provides that: "[w]hoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or other real or personal property *used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce shall be imprisoned*." 18 U.S.C. § 844(i) (emphasis added). While broad in one aspect (prosecuting the arson of "any" building), it is simultaneously limited by permitting prosecution only when such building is used in or affects interstate or foreign commerce. The effect of such limiting language ensures that there remain buildings which do not fall within the federal statute's domain. *See*

8

*Jones*, 529 U.S. at 859 (but for the interstate commerce element, § 844(i) would transform "virtually every arson in the country [into] a federal offense.").

Following *Jones*, courts have been reluctant to find that places of worship fall within the ambit of the federal arson statute. Certainly, on its face, the arson statute does not create a "natural home" for the destruction of a church. *United States v. Doggart*, 947 F.3d 879, 883 (6th Cir. 2020). Similar to the residential home in *Jones*, a place of worship is "simply not the kind of building traditionally used for commercial activities." *Id*. at 886. However, there are exceptions where a place of worship may satisfy the statute's interstate commerce element.

To determine whether a place of worship meets the interstate commerce element of § 844(i), the *Jones* court established a two-part inquiry. First, courts must determine "the function of the building itself[.]" *Id*. at 854. Second, courts must determine whether that function "affects interstate commerce." *Id*. "Each piece of real or personal property, taking into account its function, must be assessed individually to determine the extent to which it impacts interstate commerce." *Laton*, 352 F.3d at 295. Based on the Government's uncontested proffer of evidence elicited at the November 21, 2024 hearing, neither *Jones* prong has been met here.

### 1. Function Analysis

For purpose of the function analysis, it is uncontested that the primary function of the Church was to act as a place of worship. However, a place of worship is not necessarily limited to its primary use. *See Rayborn,* 312 F.3d at 233 ("Other circuits have analyzed primary and secondary functions of church buildings") (citing *United States v. Terry*, 257 F.3d 366, 369 (4th Cir. 2001) (finding that a building primarily functioned as a

9

church, but secondarily functioned as a daycare center.)). In the present case, however, the function analysis compels this Court to conclude that the building functioned solely as a church. While there may have been other activities in the building—such as youth nights, fundraisers, cookouts, and movie nights—none of these would support a finding that the building served a secondary function, for example, a restaurant or movie theatre. *See Rayborn*, 312 F.3d at 233 (activities such as buffet breakfasts, gospel concerts, and radio broadcasts were insufficient to support a finding of any secondary function).

### 2. Effect on Interstate Commerce

The conclusion that the Church primarily functioned solely as a place of worship does not end the inquiry. As noted above, the second step in the *Jones* inquiry is whether the Church's activities affect interstate commerce. Generally, a church's primary function is non-commercial and non-economic. *See Doggart*, 947 F.3d at 885 ("That a 'building is a church' or house of worship of any kind, 'without more,' does not cut it." (quoting *United States v. Rea*, 300 F.3d 952, 960 (8th Cir. 2002))). However, some churches may engage in activities that bring it within the reach of § 844(i). *Rayborn*, 312 F.3d at 233 ("'while churches are not commonly considered a business enterprise, churches can and do engage in commerce.'" (quoting *United States v. Odom*, 252 F.3d 1289, 1294 (11th Cir. 2001))). Whether those activities do so rest on whether the building is used in "active employment for commercial purposes, and not merely a passive, passing, or past connection to commerce." *Jones* at 855. Interstate activity that is "too fleeting and incidental" will not pass such constitutional muster. *Doggart*, 947 F.3d at 884; *see also United States v. Torres*, 8 F.4th 413, 416 (5th Cir. 2021) (connections that are "[s]o fleeting, negligible, and passive" will not suffice.).

10

To satisfy the jurisdictional element of § 844(i), the United States argues that its proffered facts are sufficient to establish a connection between the Church and interstate commerce. These undisputed proffered facts include:

> (1) the week before the arson occurred, the Church participated in the U.S. 25 yard sale as a fundraiser for an international mission trip, which raised $700; (2) the Church participated in multiple fundraising events for international mission trips; (3) the building was used as a youth event location; (4) the Church hosted cookouts; (5) the Church held movie nights; (6) the Church provided food for the community; (7) the Church was a youth facility for a local recovery team; (8) communion was purchased out of state; (9) there were four or five visiting pastors from out of state; and (10) the building was an annex.

Addressing the proffered list in reverse order, the United States emphasized at the pretrial hearing that the building involved in the arson was an annex, and thus less involved in the religious activities and more involved with the organization's interstate commerce activities. Putting aside the fact that the United States did not challenge that the building's primary function was in fact a place of worship, the fact that the building may have been an annex, or secondary location, is insignificant. The mere fact that the building may not be the primary location for worship services, without more, is not significant enough to bring it to the level of active engagement in interstate commerce required by *Jones*. *See United States v. Rea*, 300 F.3d 952, 962 (8th Cir. 2002) (finding that the church annex, which sat feet away from the primary church, did not have sufficient commercial functions within the meaning of § 844(i)).

With respect to items three through nine of the Government's proffered list, these are the exact type of connections courts have held to be merely attenuated and passing connections. In *Doggart*, the Sixth Circuit noted that a place of worship is one that is used for "spiritual and local activities." 947 F.3d at 884. These spiritual activities could tie into

11

interstate commerce, just as activities within a family dwelling could be connected to interstate commerce. *Id*. However, "just as these and comparable activities did not suffice to treat residences as buildings used in interstate commerce, they do not suffice to transform houses of worship into buildings used in interstate commerce." *Id*. at 885. That a church engages in activities that are "incidental to the mission of the church" is simply not enough. *Id*. at 886. Here, the United States proffered that the occasional youth or movie night, cookout, out-of-state pastor, and out-of-state communion supplies satisfies § 844(i). The Court disagrees. Not only are these activities incidental to the mission of a church (providing a source of community for people of a shared faith), they are too fleeting and passive to substantially affect interstate commerce. *See Rayborn*, 312 F.3d at 236 (Gilman, J., concurring) (factors such as out-of-state members, purchasing food for breakfasts and picnics, and purchasing food and flowers for funerals are "the kinds of 'passive [or] passing' activities" that are insufficient"); *Odom*, 252 F.3d at 1296-97 (receiving donations, handing out bibles, and contributing to an out-of-state source are "too passive, too minimal and too indirect to substantially affect interstate commerce"); *United States v. Davies*, 394 F.3d 182, 196 (3rd Cir. 2005) (purchase of out-of-state goods, among other things, was "hardly 'active employment for commercial purposes.'"); *United States v. Lamont*, 330 F.3d 1249 (9th Cir. 2003) (factors such as out-of-state members or goods insufficient to satisfy statutory definition).

Finally, as to items one and two, the Court holds that participation in the U.S. 25 yard sale for purposes of raising funds for an international mission trip and the various other fundraisers are also insufficient to bring the Church within the scope of the federal arson statute. Specifically, the Court first notes that a single yard sale that raised $700,

12

and multiple fundraisers prior, are not direct, regular, or substantial. Indeed, the fundraisers relied on by the United States are *de minimis* in use, at best. Simply put, the high standard set by *Jones*, which requires active employment, is simply not satisfied here—a few fundraisers throughout the years are far too fleeting to pass constitutional muster. Additionally, the Court notes that fundraising for a mission trip is often an essential aspect of a church's spiritual enterprise. As noted by the Sixth Circuit in *Doggart*, proselytization or similar spiritual enterprises are often an important part of some faiths, and "any commerce affected by these religious activities [are] incidental to the mission of the church, even if it might affect interstate commerce." 947 F.3d at 886*; see also id*. ("'[T]he distribution of publications regarding religion,' like a mission trip, is 'simply an important part of the function of a church'—often 'an essential aspect of promoting religious beliefs.").[5] Here, not only were the fundraisers few and far between, the Sixth Circuit in *Doggart* noted its hesitancy in finding that a mission trip fundraiser, which is often an important function of a church, rises to the level of interstate commerce impact required by *Jones*.

The United States also urges the Court to look at these facts not in isolation, but also in the aggregate. However, even when analyzing the proffered evidence in the aggregate, it is nevertheless insufficient. Unlike *Rayborn*, where the Sixth Circuit found that a regular radio broadcast rendered the church's interstate connections "direct,

---

[5] Other circuit courts have followed similar lines of reasoning. For example, in *Davies*, the Third Circuit found that making $12,000 in donations to ten mission trips, nine of which were international, were insufficient. 394 F.3d at 194-96. Specifically, the Court noted that the donations to foreign countries were not probative of the Church's connection to interstate commerce. *Id*. Moreover, the Court noted that the single out-of-state donation to a mission in California, whose activities were not known, did not support a finding of active employment for commercial purposes. *Id*.

13

regular, and substantial," here, every one of the Church's interstate connections proffered by the United States were too irregular and inconsequential to interstate commerce to qualify as active employment for commercial purposes. 312 F.3d at 234.

For these reasons, the Court concludes that the Church is not "used in" interstate commerce or in any activity affecting interstate commerce under the statutory definition of 18 U.S.C. § 844(i).

## IV. CONCLUSION

Based on the Government's proffer of the evidence, the arguments presented, and the authorities cited, the Court concludes that the United States cannot, as a matter of law, prove the required interstate commerce element of the offense charged. Accordingly,

**IT IS ORDERED** as follows:

(1) Defendant Brendan James Gibson's and Defendant Robert Jacob Hughes's Motions to Dismiss the Indictment (Docs. # 22 and 23) are **GRANTED**;

(2) This is a final and appealable Order; and

(3) The Defendants' Motions to Suppress (Docs. # 26 and 29) are **DENIED WITHOUT PREJUDICE** with right to renew in either state court or in this Court in the event this Order is vacated on appeal by the Sixth Circuit.

This 3rd day of December, 2024.



Signed By:
*David L. Bunning*  DB
**United States District Judge**

G:\Judge-DLB\DATA\ORDERS\Covington Criminal\2024\24-39 MOO MTD.docx